IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| MARCUS WERNER ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 3:09-cv-0701 |
| ) | JUDGE HAYNES |
| BELL FAMILY MEDICAL CENTER, INC., ) | |
| MIDDLE TN MEDICAL ASSOCIATES, ) | |
| PLLC, NII SABAN QUAO, M.D., P.C., ) | |
| ARIKANA CHIHOMBORI, M.D., AND ) | |
| NII SABAN QUAO, M.D. ) | |
| ) | |
| Defendants. ) | |
| ) | |

## MEMORANDUM

Marcus Werner, Plaintiff, filed this action against Defendants: Bell Family Medical Center Inc. ("BFM"), Mid-Tennessee Medical Associates ("MTM"), Nii Saban Quao, M.D., P.C. ("Quao PC"), Dr. Arikana Chihombori, M.D. and Dr. Nii Saban Quao, M.D. Plaintiff asserts claims under the Fair Labor Standards Act, 201 U.S.C. § 201, et seq. (FLSA), 29 U.S.C. § 215(a)(3), retaliation and wrongful termination claims under the Tennessee Public Protection Act, (TPPA), T.C.A. § 50-1-304, and Tennessee common law. Plaintiff seeks declaratory and monetary relief for overtime and for retaliatory termination after pursuing an administrative complaint with the United States Department of Labor and filing suit for overtime wages against Defendants. Plaintiff also asserts a state law defamation claim for injury to his professional reputation. (Docket Entry No. 26, Second Amended Complaint at 1-2).

Before the Court is Plaintiff's motion for partial summary judgment against all Defendants, (Docket Entry No. 68), contending, in sum, that Defendants Bell Family Medical,

Mid-Tennessee Medical Associates and Quao, P.C. are a single enterprise and therefore are a covered employer under the FLSA; Plaintiff was an employee of the Defendants as defined by the FLSA rather than an independent contractor; Defendants willfully failed to pay Plaintiff wages he was entitled to under FLSA and Defendants terminated Plaintiff in retaliation for engaging in protected conduct when he sought administrative redress. (Docket Entry No. 69, Plaintiff's Memorandum in Support of Motion for Partial Summary Judgment).

Defendants' response to Plaintiff's motion, (Docket Entry No. 82), argues that Plaintiff was an independent contractor for Defendants, that the Defendants do not constitute a single enterprise under the FLSA and Defendants did not violate the anti-retaliation or retaliatory discharge provisions of the FLSA, TPPA or Tennessee common law when they terminated Plaintiff for his disruptive behavior.

Plaintiff's reply, (Docket Entry No. 89), challenges Defendants' assertions and contends that Defendants are judicially estopped from claiming that they are not a single business entity because of an allegedly contrary claim made in Rutherford County Chancery Court in related litigation.

For the reasons set forth below, Plaintiff's motion for partial summary judgment should be denied because Defendants have presented sufficient proof of disputed material facts.

### 1. Review of the Record[1]

Defendants Bell Family Medical Center Inc., Mid-Tennessee Medical Associates and Nii Saban Quao, M.D., P.C. are medical offices. (Docket Entry No. 83, Defendants' Response to

---

[1] Upon a motion for summary judgment, the factual contentions are viewed in the light most favorable to the party opposing the motion for summary judgment. Duchon v. Cajon Co., 791 F.2d 43, 46 (6th Cir. 1986). As will be discussed infra, under Supreme Court holdings, upon the filing of a motion for summary judgment, the opposing party must come forth with sufficient evidence to withstand a motion for a directed verdict. Anderson v. Liberty Lobby, 477 U.S. 242, 247-52 (1986). Here material factual disputes exist regarding the Plaintiff's employment relationship with the defendant and thus, this section does not constitute findings of fact under Fed. R. Civ. P. 56(e).

Plaintiff's Statement of Undisputed Material Facts at ¶1). BFM has offices in Murfreesboro, Antioch and Smyrna, Tennessee. Id. at ¶ 2. MTM is located at in LaVerge, Tennessee, and Quao P.C. in Lebanon, Tennessee. Id. at ¶¶ 3-4. BFM is owned by Dr. Arikana Chihombori. Id. at ¶ 6. MTM is owned by Dr. Chihombori, Dr. Harry Bonnaire and Dr. Nii Saban Quao. Id. at ¶ 7. Each doctor owns a third of MTM and Dr. Chihombori is in charge of the day to day running of MTM as the acting medical director. Id. Dr. Quao owns Quao PC. Id. at ¶ 8.

Defendant Chihombori hired Plaintiff Marcus Werner to work Tuesdays and Thursdays as a sonogram technician for BFM in Murfreesboro on or around January 5, 2005. Id. at ¶ 11. Plaintiff worked in BFM's Antioch location on Wednesdays starting in March 2005. Id. Plaintiff started working for Defendant Quao at Quao, PC and MTM in March 2006. Id. at ¶ 13.

Plaintiff's schedule was usually the same each week: Monday at Quao PC, Tuesday at BFM Murfreesboro, Wednesday and Thursday with half of the day at BFM Murfreesboro and half in Antioch and Fridays split between MTM and Quao PC. Id. at ¶ 18. During the year that Plaintiff worked with BFM only, he also worked as a sonographer with various medical companies. (Docket Entry No. 81-1, Werner Deposition at 76 - 80). Plaintiff did not require Defendant Chihombori's permission to do this additional work. Id.

Defendant Chihombori and Plaintiff agreed that Plaintiff would receive forty dollars (40) an hour for his work. (Docket Entry No. 83, Defendants' Response to Plaintiff's Statement of Undisputed Material Facts at ¶14). Plaintiff was aware that the employee he was replacing had operated as an independent contractor and never discussed with Defendant Chihombori the exact nature of his employment relationship. (Docket Entry No. 81-1, Werner Deposition at 77). Defendant Quao followed the same wage scale when he hired Plaintiff at Quao PC. Id. Plaintiff did not receive any bonuses or overtime for his work and his only source of potential

3

compensation was his hourly wage. (Docket Entry No. 83, Defendants' Response to Plaintiff's Statement of Undisputed Material Facts at ¶¶ 58, 66). Plaintiff was paid by the hour whether he did an ultrasound examination or not. Id. at ¶ 59. Plaintiff was not compensated for his travel time between offices. Id. at ¶ 65.

Plaintiff initially used a stationary ultrasound machine when he was working for BFM only, but MTM's owners agreed to purchase him a portable machine when he started working for MTM and Quao PC. (Docket Entry No. 83, Defendants' Response to Plaintiff's Statement of Undisputed Material Facts at ¶¶ 15, 16). Plaintiff used the new machine at all three entities, though it was "owned" by MTM. Id. at ¶ 17. All the supplies and patients Plaintiff needed to perform his job duties were made available through the Defendants. Id. at ¶ 57. Plaintiff acknowledges that this was a typical arrangement for a sonographer working as an independent contractor. Id. at ¶¶ 56, 57.

Defendants could send patients to diagnostic centers for ultrasound examinations, but preferred to offer scans at their facilities. Id. at ¶ 61. Plaintiff was dependant on the physicians to order scans for patients, but he had full discretion on how to perform the ultrasound examination. Id. at ¶ 60. The scheduling for the ultrasound examinations depended on Plaintiff's availability to perform the exams, and if he was unable, they would be rescheduled based on his availability. (Docket Entry No. 81-1, Werner Deposition at 83-85).

## 2. Conclusions of Law

"The very reason of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Advisory Committee Notes on Rule 56, Federal Civil Judicial Procedure and Rules (West Ed. 1989). Moreover, "district courts are widely acknowledged to possess the power to enter summary judgment sua

sponte, so long as the opposing party was on notice that she had to come forward with all of her evidence." Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986). Accord Routman v. Automatic Data Processing, Inc., 873 F.2d 970, 971 (6th Cir. 1989).

In Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986), the United States Supreme Court explained the nature of a motion for summary judgment:

> Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment 'shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.
>
> As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.

477 U.S. at 247-48 (emphasis in the original and added in part). Earlier the Supreme Court defined a "material fact" for Rule 56 purposes as "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted).

A motion for summary judgment is to be considered after adequate time for discovery. Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986). Where there has been a reasonable opportunity for discovery, the party opposing the motion must make an affirmative showing of the need for additional discovery after the filing of a motion for summary judgment. Emmons v. McLaughlin, 874 F.2d 351, 355-57 (6th Cir. 1989). But see Routman v. Automatic Data Processing, Inc., 873 F.2d 970, 971 (6th Cir. 1989).

There is a certain framework in considering a summary judgment motion as to the required showing of the respective parties as described by the Court in Celotex:

> Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact. . . . [W]e find no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials negating the opponent's claim.

477 U.S. at 323 (emphasis deleted).

As the Court of Appeals explained, "[t]he moving party bears the burden of satisfying Rule 56(c) standards." Martin v. Kelley, 803 F.2d 236, 239, n. 4 (6th Cir. 1986). The moving party's burden is to show "clearly and convincingly" the absence of any genuine issues of material fact. Sims v. Memphis Processors, Inc., 926 F.2d 524, 526 (6th Cir. 1991) (quoting Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986)). "So long as the movant has met its initial burden of 'demonstrat[ing] the absence of a genuine issue of material fact,' the nonmoving party then 'must set forth specific facts showing that there is a genuine issue for trial.'" Emmons, 874 F.2d at 353 (quoting Celotex and Rule 56(e)).

Once the moving party meets its initial burden, the Court of Appeals warned that "[t]he respondent must adduce more than a scintilla of evidence to overcome the motion [and]…must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989) (citations omitted). See also Hutt v. Gibson Fiber Glass Products, 914 F.2d 790, 792 (6th Cir. 1990) ("A court deciding a motion for summary judgment must determine 'whether the evidence presents a sufficient disagreement to require a submission to the jury or whether it is so one-sided that one party must prevail as a matter of law.'") (quoting Liberty Lobby).

If both parties make their respective showings, the Court then determines if the material factual dispute is genuine, applying the governing law.

> More important for present purposes, <u>summary judgment will not lie if the dispute about a material fact is 'genuine' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.</u>
>
> * * *
>
> Progressing to the specific issue in this case, we are convinced that <u>the inquiry involved in a ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits</u>. If the defendant in a run-of-the-mill civil case moves for summary judgment or for a directed verdict based on the lack of proof of a material fact, <u>the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented</u>. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. <u>The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict- 'whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed.'</u>

<u>Liberty Lobby</u>, 477 U.S. at 248, 252 (citation omitted and emphasis added). It is likewise true that:

> In ruling on a motion for summary judgment, the court must construe the evidence in its most favorable light in favor of the party opposing the motion and against the movant. Further, the papers supporting the movant are closely scrutinized, whereas the opponent's are indulgently treated.
>
> It has been stated that: 'The purpose of the hearing on the motion for such a judgment is not to resolve factual issues. It is to determine whether there is any genuine issue of material fact in dispute. . . .'

<u>Bohn Aluminum & Brass Corp. v. Storm King Corp.</u>, 303 F.2d 425, 427 (6th Cir. 1962) (citation omitted). As the Court of Appeals stated, "[a]ll facts and inferences to be drawn therefrom must be read in a light most favorable to the party opposing the motion." <u>Duchon v. Cajon Co.</u>, 791 F.2d 43, 46 (6th Cir. 1986) (citation omitted).

In Street, the Court of Appeals discussed the trilogy of leading Supreme Court decisions and other authorities on summary judgment and synthesized ten rules in the "new era" on summary judgment motions:

1. Complex cases are not necessarily inappropriate for summary judgment.

2. Cases involving state of mind issues are not necessarily inappropriate for summary judgment.

3. The movant must meet the initial burden of showing 'the absence of a genuine issue of material fact' as to an essential element of the non-movant's case.

4. This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.

5. A court should apply a federal directed verdict standard in ruling on a motion for summary judgment. The inquiry on a summary judgment motion or a directed verdict motion is the same: 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that the party must prevail as a matter of law.'

6. As on federal directed verdict motions, the "scintilla rule" applies, i.e., the respondent must adduce more than a scintilla of evidence to overcome the motion.

7. The substantive law governing the case will determine what issues of fact are material, and any heightened burden of proof required by the substantive law for an element of the respondent's case, such as proof by clear and convincing evidence, must be satisfied by the respondent.

8. The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'

9. The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.

10. The trial court has more discretion than in the 'old era' in evaluating the respondent's evidence. The respondent must 'do more than simply show that there is some metaphysical doubt as to the material facts.' Further, '[w]here the record taken as a whole could not lead a rational trier of fact

> to find' for the respondent, the motion should be granted. The trial court
> has at least some discretion to determine whether the respondent's claim is
> 'implausible.'

Street, 886 F.2d at 1479-80.

The Court has distilled from these collective holdings four issues that are to be addressed upon a motion for summary judgment: (1) has the moving party "clearly and convincingly" established the absence of material facts?; (2) if so, does the plaintiff present sufficient facts to establish all the elements of the asserted claim or defense?; (3) if factual support is presented by the nonmoving party, are those facts sufficiently plausible to support a jury verdict or judgment under the applicable law?; and (4) are there any genuine factual issues with respect to those material facts under the governing law?

This Court has previously noted the summary judgment standard for whether a plaintiff is an employee or independent contractor:

> On the question of whether Plaintiffs were "employees" or "independent contractors" within the meaning of the FLSA, "summary judgment may be appropriate, because the question '[w]hether a particular situation is an employment relationship is a question of law.'
>
>> Normally, a judge will be able to make this determination [whether "employee" or "independent contractor"] as a matter of law. However, where there is a genuine issue of fact or conflicting inferences can be drawn from the undisputed facts...the question is to be resolved by the finder of fact in accordance with the appropriate rules of law."
>
> If this Court can determine whether Plaintiffs were employees or independent contractors on the basis of the undisputed facts and the necessary inferences arising therefrom, then resolution of this issue is proper at the summary judgment stage.

Wilson v. Guardian Angel Nursing, Inc., No. 3:07-0069, 2008 WL 294461, at *10 (M.D. Tenn. 2008) (citations omitted).

Congress intended the FLSA to provide workers with minimum protections against exploitative labor practices and to accomplish this gave "employee" the "broadest definition that has ever been included in any one act." United States v. Rosenwasser, 323 U.S. 360, 363 n.3 (1945). The Sixth Circuit uses the following factors to determine employee status: "1) the permanency of the relationship between the parties; 2) the degree of skill required for the rendering of the services; 3) the worker's investment in equipment or materials for the task; 4) the worker's opportunity for profit or loss, depending upon his skill; and 5) the degree of the alleged employer's right to control the manner in which the work is performed." Donovan v. Brandel, 736 F.2d 1114, 1117 (6th Cir. 1984).

The Sixth Circuit also examines the extent to which the employee's service is an integral part of the alleged employer's business. Id. at 1120. This is determined by analyzing "the worker's economic dependence upon the business for which he is laboring." Id. Economic dependence is analyzed by determining if similar work is available elsewhere, who controls the rate of pay and whether the employee is forced to work either long hours or for low pay. Id.

Finally, "this test is a loose formulation, leaving the determination of employment status to case-by-case resolution based on the totality of the circumstances." Imars v. Contractors Manufacturing Services, 165 F.3d 27 (Table), 1998 WL 598778, at *3 (6th Cir. 1998) quoting Lilley v. BTM Corp., 958 F.2d 746, 750 (6th Cir.1992). The ultimate inquiry of "the multi-factor "economic realities" test" is "whether the putative employee is economically dependent upon the principal or is instead in business for himself." Id.

### A. The Permanence of the Relationship Between the Parties

"Under the permanence prong, the duration of the working relationship is not as significant as the number of hours worked and the exclusivity of the working arrangement. This

10

is particularly true where the industry is such that work is partitioned among discrete projects." Guardian Angel Nursing, 2008 WL 2944661 at 12 (quoting Donovan v. Gillmor, 535 F.Supp. 154, 162-63 (N.D. Ohio 1982) *appeal dismissed*, 708 F.2d 723 (6th Cir. 1982)); Secretary of Labor, U.S. Dept. of Labor v. Lauritzen, 835 F.2d 1529, 1537 (7th Cir. 1987). Here, the exclusivity of the working arrangement was at the discretion of the Plaintiff. (Docket Entry No. 81-1, Werner Deposition at 76-80). Conversely, Plaintiff worked long hours for the Defendants because his primary complaint is the failure to pay overtime. Thus, the Court finds that this factor is not particularly helpful in determining Plaintiff's employment status.

### B. The Degree of Skill Required of the Plaintiff

Occupational skills are not "the monopoly of independent contractors." Lauritzen, 835 F.2d 1529 at 1537. Instead, the analysis is whether the worker has "the skills necessary to locate and manage discrete work projects characteristic of independent contractors or whether their skills are of the task-specific kind that form a piece of a larger enterprise, suggesting employee status." Guardian Angel Nursing, 2008 WL 2944661 at 13.

Plaintiff's role is analogous to the role performed by the Plaintiffs in Guardian Angel Nursing, whom the Court determined performed a "narrow, rather mechanized role" and weighed this prong in favor of finding that they were employees. "The nurses in the present case possess technical skills but nothing in the record reveals that they used these skills in any independent way." Id. quoting Brock v. Superior Care Inc., 840 F.2d 1054, 1060. Plaintiff also was performing a medical task at the discretion or referral of a doctor. While Plaintiff may have had some control over his schedule, discussed below, the application of his skills entailed repeating the same procedures when directed by a physician. Consequently this prong weighs in favor of finding that Plaintiff was an employee of Defendants.

11

### C. Extent of Plaintiff's Investment in Equipment

"The capital investment factor is most significant if it reveals that the worker performs a specialized service that requires a tool or application which he has mastered or that the worker is simply using implements of the [alleged employer] to accomplish the task." Brandel, 736 F.2d at 1118-19. Plaintiff's investment in the tools or instruments used for his work clearly favors finding that Plaintiff was an employee of Defendants. Defendant invested in and provided Plaintiff with the portable ultrasound machine, the essential tool he needed to perform his trade. (Docket Entry No. 83, Defendants' Response to Plaintiff's Statement of Undisputed Material Facts at ¶¶ 15, 16). Defendant also paid for all the necessary supplies and provided the examination room. While Plaintiff applied his specialized knowledge and training to utilize the equipment provided him by his employers, he would not have been able to perform his trade independent of their investment. This prong suggests that Plaintiff was an employee of Defendants.

### D. Plaintiff's Opportunity for Profit or Loss

"The question under the opportunity for profit or loss factor is whether Plaintiffs' earnings were tied to their performance once they accepted work. It is the mark of an independent contractor that a stake in the venture provides both carrot and stick, such that planning, efficiency and skill are rewarded above and beyond the initial contract." Guardian Angel Nursing, 2008 WL 2944661 at 14 (citations omitted).

Here, Plaintiff's performance was not tied to his work in any fashion resembling an independent contractor. Plaintiff was paid an hourly wage and there are no facts in the record that suggest that Plaintiff could maximize his earnings by working faster or more efficiently. Defendants' argue that Plaintiff controlled his hours and frequency of his work and that he was

free to take other jobs. This is relevant for other factors in the "economic realities" test, but does not materially change the Plaintiff's opportunity for profit or loss. Plaintiff's earnings were not tied to his performance once Plaintiff accepted the job. Thus, this factor favors a finding that Plaintiff was Defendants' employee.

### E. The Degree of Defendant's Control over Plaintiff's Work

Plaintiff was free to perform the ultrasound examination in the manner he chose and was not supervised or directed by the Defendants. (Docket Entry No. 81-1, Werner Deposition at 82-85). Defendants, however, scheduled the appointments—based on Plaintiff's availability—and referred their patients when the procedure was appropriate. Id. These appointments could be rescheduled, if Plaintiff were unavailable.

Defendants have introduced sufficient facts for the Court to conclude that a genuine dispute of material fact exists. See Imars, 1998 WL 598778, at *6 ("Control of the manner in which work is performed makes [Plaintiff] look like a contractor. He controlled his hours and his methods, with [Defendant] controlling only the assignments"); Brandel, 736 F.2d at 1119 (Migrant "pickle" farmers are independent contractors according to this prong of test because owner and planter of the "pickle" fields doesn't oversee the day-to-day operations and does not dictate the hours or methods of the migrant farmers).

### F. Whether Plaintiffs' Service is an Integral Part of the Defendants' Business

Ultrasound examinations were one category of Defendants' practice. Defendants' business would continue without the ultrasound examinations and they always retained the option of sending their patients to independent clinics for these examinations. (Docket Entry No. 71, Chihombori Deposition at 141, 150). While the Tennessee Department of Labor concluded that these services were integral to Defendants' business, the record before this Court suggests

that Plaintiff's labor was a convenience rather than a necessity to the defendant.[2] Id. The Court finds this factor weighs in favor of Plaintiff having an independent contractor relationship with Defendants.

### G. Economic Dependence

The Sixth Circuit uses three factors to determine a worker's economic dependence on an alleged employer: (1) whether the worker was subject to long hours at low wages; (2) whether similar work was available elsewhere and (3) whether the alleged employer unilaterally controls the rate of pay. Brandel, 763 F.2d at 1120. The purpose of this analysis is to determine whether the alleged employee is economically dependent upon the principal or is in business for himself. Imars, 1998 WL598778 at *3. To prevent this analysis from supplanting the need for the rest of the test, this factor refers to the degree the worker in question is "bound" to their alleged employer. Guardian Angel Nursing, 2008 WL2944661, at *17.

Plaintiff received a substantial hourly wage of forty (40) dollars an hour and was somewhat free to determine his hours—evidenced by the willingness of his employers to schedule procedures around his availability. Plaintiff sought and performed similar work at other

---

[2] The Plaintiff provides a decision of an appeals tribunal from the Tennessee Department of Labor and Workforce Development, Employment Security Division. (Docket Entry No. 70-2). The document states: "Here argument from the employer was that the claimant was not an employee. This argument was not convincing and the topic was not set before the Appeals Tribunal." Id. at 1. There is no mention of the relevant definitions, statutes and evidence considered by the Tennessee Department of Labor in the document supplied by Plaintiff. Plaintiff also alleges that the United States Department of Labor determined that he was an employee rather than an independent contractor. This is disputed by the Defendants, but from the report it appears that the conclusion was that Plaintiff was an employee of Defendants. (Docket Entry No. 83, Defendants Response to Plaintiff's Statements of Undisputed Material Facts at ¶49); (Docket Entry No. 50-2, Exhibit 2 at 4). The report says that Defendant Quao was given "a copy of the fact sheet on "Employment Relationship Under the FLSA." (Docket Entry No. 50-2, Exhibit 2 at 4). Neither party has provided a copy of this fact sheet or any other information concerning the standards used by the United States Department of Labor in its determination. A well-reasoned Department of Labor administrative decision is accorded deference as a persuasive authority in employment matters, but only to the degree of "the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier pronouncements, and all those factors which give it power to persuade, if lacking power to control." Fazekas v. Cleveland Clinic Foundation Health Care Ventures, Inc. 204 F.3d 673, quoting Skidmore v. Swift Co., 323 U.S. 134, 140 (1944). Here, neither determination provides any reasoning.

locations at times during his employment with the Defendants.[3] (Docket Entry No. 81-1, Werner Deposition at 76-80). This suggests that working full-time with Defendants was the result of Plaintiff's business decision based on the attractiveness of that opportunity. Plaintiff also negotiated his wage with his employers, strongly suggesting that the Plaintiff's wages were the result of a bilateral discussion.

This factor weighs in favor of finding that the Plaintiff was an independent contractor rather than an employee of the Defendants.

### H. Conclusion

The Court must view the evidence in the light most favorable to the non-moving party. Duchon v. Cajon Co., 791 F.2d 43, 46 (6th Cir. 1986). For FLSA cases, "where there is a genuine issue of fact or conflicting inferences can be drawn from the undisputed facts...the question is to be resolved by the finder of fact in accordance with the appropriate rules of law." Lilley v. BTM Corp., 958 F.2d 746, 750 n.1 (6th Cir. 1992). See Imars, 1998 WL598778 at *6; Laurizten, 835 F.2d 1529 at 1542 (Easterbrook, J., concurring) ("If we are to have multiple factors, we also should have a trial. A fact-bound approach calling for the balancing of incommensurables, an approach in which no ascertainable legal rule determines a unique outcome, is one in which the trier of fact plays the principal part."); Boudreaux v. Banctec, Inc., 3666 F.Supp .2d 425, 433-435 (E.D. La. 2005).

Here, when the facts are analyzed in the light most favorable to the non-moving party, Defendants have presented sufficient proof of disputed material facts so that summary judgment would be inappropriate. It is possible to determine from the facts presented that under the

---

[3] While the Plaintiff could argue that the record shows once he was working with all three Defendant businesses he didn't seek other work, such an argument would require Plaintiff concede that they are distinct business entities. If Plaintiff were to maintain his contention that they are a unified entity, then they must have been a unified entity when Plaintiff was performing similar work elsewhere.

"economic realities" test Plaintiff was "in business for himself." See Imars, 165 F.3d 27(Table), 1998 WL 598778 at *3.

This conclusion renders any analysis of whether the Defendants various business entities constituted a single entity for the purposes of the FLSA moot.

For the reasons discussed above, Plaintiff's motion for partial summary judgment should be denied.

An appropriate order is filed herewith.

Entered this the ___ day of March, 2011.

WILLIAM J. HAYNES, Jr.
United States District Judge