IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE

| | | |
|---|---|---|
| MARCUS WERNER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Docket No. 3:09-0701 |
| | ) | |
| BELL FAMILY MEDICAL CENTER, | ) | Judge Aspen |
| INC., MIDDLE TN MEDICAL | ) | |
| ASSOCIATES, PLLC, NII SABAN | ) | |
| QUAO, M.D., P.C., ARIKANA | ) | |
| CHIHOMBORI, M.D., NII SABAN | ) | |
| QUAO, M.D. | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

**MOTION AND MEMORANDUM IN SUPPORT OF
MOTION FOR JUDGMENT AS A MATTER OF LAW
AND ALTERNATIVE MOTION FOR NEW TRIAL**

Plaintiff Marcus Werner respectfully submits this motion and incorporated memorandum in support of his motion for an order granting him judgment as a matter of law ("JMOL") pursuant to Rule 50(b) of the Federal Rules of Civil Procedure or, alternatively, a new trial pursuant to Rule 59.

**INTRODUCTION**

Pursuant to Rule 50(b) of the Federal Rules of Civil Procedure, Plaintiff Marcus Werner respectfully moves the Court for an order granting him judgment as a matter of law against all Defendants, Bell Family Medical Center, Inc. ("BFM"), Middle Tennessee Medical Associates, PLLC ("MTM"), Nii Saban Quao, M.D., P.C.'s ("Quao, PC"), Arikana Chihombori, M.D., and Nii Saban Quao, M.D. on his claims for violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, and wrongful termination/retaliation under in violation of the FLSA, 29 U.S.C. § 215(a)(3), Tennessee Public Protection Act ("TPPA"), T.C.A. § 50-1-304, and

Tennessee's common law prohibition against wrongful termination.[1]  Alternatively, pursuant to Rules 50(b) and Rule 59, Plaintiff requests a new trial on these claims.

There is no legally sufficient evidentiary basis upon which a reasonable jury could find in favor of Defendant on Plaintiff's FLSA and retaliation claims.  In particular, there was no legally sufficient basis for the jury to not find:

(1) Plaintiff was an employee under the FLSA, TPPA and Tennessee common law;[2]

(2) Plaintiff is owed travel time from office to office is entitled to $6,834.37 in unpaid travel time;

(3) Plaintiff is owed overtime in the amount of $18,190.00 in unpaid overtime for time worked in excess of a forty (40) hour workweek;

(4) Defendants willfully disregarded the requirements of the FLSA;

(5) Defendants Quao and Chihombori operated jointly with the entity Defendants;

(6) Plaintiff was terminated because he engaged in protected activity under the FLSA and Tennessee law and is entitled to $117,434.00 in backpay;

(7) Defendants willfully disregarded the requirements of the FLSA;

(8) Defendants Chihombori and Quao operated jointly with the entity Defendants;

Plaintiff also seeks an order as a matter of law that:

(9) The FLSA damages are due to be liquidated; and

(10) Plaintiff is to be awarded attorney's fees and costs.

---

[1] The jury entered a verdict on behalf of Plaintiff for his defamation claims.  Plaintiff does not seek to disturb that verdict.

[2] The jury did correctly find that Defendants operated as a single enterprise, as the evidence overwhelmingly demonstrated.  As such, overtime pay was warranted as the evidence established Defendants used the guise of operating independently as its excuse for not paying Plaintiff time and half for the time he worked in excess of a forty hour workweek as set forth in Trial Exhibits 29, 2.

2

Plaintiff is entitled to JMOL because, at the conclusion of the evidence at the trial of this case, there was no genuine issue of material fact for the jury to decide. Defendants offered no legally sufficient reason to find that Plaintiff was not an employee, thus he is owed unpaid wages under the FLSA and Defendants are liable for backpay when it illegally terminated his employment because he filed a "lawsuit." It appeared, based on the note the jury sent out after approximately three (3) hours of deliberations asking if "the determination of whether Mr. Werner was an employee or independent contractor [had] bearing on the other issues of overtime pay, backpay and travel time" that the jury was more concerned about the amount of uncontested damages that was presented in evidence rather than correctly applying the facts to the law.[3] To the contrary, the overwhelming evidence established that reasonable minds could reach only one legally sufficient conclusion in this case: that Plaintiff was an employee and Defendants terminated his employment when he asserted his rights under state and federal law. Further, the evidence established Defendants willfully violated the FLSA and that Defendants Chihombori and Quao operated jointly with the entity Defendants. Therefore, Plaintiff is entitled to JMOL on damages for unpaid time under the FLSA going back three years and backpay. Lastly, Plaintiff seeks an order that the court should order the FLSA damages be liquidated and be awarded attorney's fees.

In the alternative, Plaintiff is entitled to a new trial. The jury verdict is against the clear weight of the evidence and contrary to the law. Respectfully, the issue of whether Plaintiff was an employee (versus an independent contractor) was an issue of law that should not have been given to the jury in the first instance. Thus, the Plaitniff's JMOL at the close of evidence should have been granted as to Plaintiff's employee status.

**I.**     **Standard of Review**

---

[3] The question on the note was responded to as "yes."

The Court reviews a Rule 50(b) motion for JMOL *de novo*. "Under Rule 50, a court should render judgment as a matter of law when 'a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue.'" *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 149, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000) (quoting Fed. R. Civ. P. 50(a)). "[J]udgment as a matter of law 'may be granted only if in viewing the evidence in the light most favorable to the non-moving party, there is no genuine issue of material fact for the jury, and reasonable minds could come to but one conclusion, in favor of the moving party.'" *Noble v. Brinker Int'l., Inc*., 391 F.3d 715, 720 (6th Cir. 2004) (citation omitted).

## II.    Plaintiff is Entitled to JMOL on his FLSA Claims for Unpaid Time

"Congress enacted the [FLSA] 'to compensate those who labored in excess of the statutory maximum number of hours for the wear and tear of extra work." *Wood v. Mid-Am. Mgmt. Corp.,* 192 F. App'x 378, 379 (6th Cir. 2006). Pursuant to section 207 of the FLSA:

> [e]xcept as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

### A.    Plaintiff Was An Employee

Based on the evidence presented at trial, the only conclusion that the jury should have come to was that Plaintiff was an employee. Whether Plaintiff was an employee or an independent contractor is an issue of law. *Fegley v. Higgins,* 19 F.3d 1126, 1132 (6th Cir. 1994) ("Whether a particular situation is an employment relationship is a question of law."); *Imars v. Contractors Manufacturing Svcs., Inc*., 1998 U.S. App. LEXIS 21073 at *3 (6th Cir. 1998)

4

(same). The FLSA defines employment very broadly. *Imars*, 1998 U.S. App. LEXIS 21073 at *7. *See* 29 U.S.C. § 203(e)(1)(employee defined as "any individual employed by an employer." The FLSA defines "employ" as "to suffer or permit to work." 29 U.S.C. § 203(g). To "employ" under the FLSA is broader than the common-law definitions used by other statutory schemes and has been described as "the broadest definition that has ever been included in any one act." *See Nationwide Mut. Ins. Co. v. Darden,* 503 U.S. 318, 326 (1992) (noting that FLSA has broader coverage than ERISA, which relies on traditional agency-law principles to determine employee status); *See United States v. Rosenwasser,* 323 U.S. 360, 363 n.3 (1945). The definition is "to be determined in light of the purposes of the legislation" so that "employees are those who as a matter of economic reality are dependent upon the business to which they render service." *Imars,* 1998 U.S. App. LEXIS 21073 at *8 (citing *Donovan v. Brandel,* 736 F.2d 1114, 1116 (6th Cir. 1984)).

Workers cannot contractually give up their rights under the FLSA, thus, contractual intention is rejected as a dispositive consideration because "[t]he FLSA is designed to defeat rather than implement contractual arrangements." *Imars*, 1998 U.S. App. LEXIS 21073 *15 (internal cites omitted). The Sixth Circuit uses the six factor "economic realities" test to determine whether a worker is properly an employee or independent contractor. *Imars,* 1998 U.S. App. LEXIS 21073 at *9-10 (citing *Brandel,* 736 F.2d at 1117). The six factors are: "(1) the permanency of the relationship between the parties; (2) the degree of skill required for the rendering of the services; (3) the worker's investment in equipment or materials for the task; (4) the worker's opportunity for profit or loss, depending upon his skill; (5) the degree of the alleged employer's right to control the manner in which the work is performed; and (6) whether the service rendered is an integral part of the alleged employer's business." *Id.* at *9-10.

The Sixth Circuit also examines the extent to which the employee's service is an integral part of the alleged employer's business. *Brandel*, 736 F.2d at 1120. This is determined by analyzing "the worker's economic dependence upon the business for which he is laboring." *Id*. Economic dependence is analyzed by determining if similar work is available elsewhere, who controls the rate of pay and whether the employee is forced to work either long hours or for low pay. *Id*. In other words, "economic dependence under the seventh factor refers to the degree that the workers in question are 'bound' to their alleged employer," but economic dependence is not definitive, nor is it meant to supplant the entire economic realities test. *Wilson v. Guardian Angel Nursing, Inc.*, 2008 U.S. Dist. LEXIS 59623 at *52 (M.D.Tenn. July 31, 2008). Moreover, even though the actual rate of pay may be generous, the rate is not definitive to the entire economic reality test. *Id*. at 52.

In this case, as a matter of law, the only reasonable conclusion that could be drawn from the evidence was that Plaintiff was an employee. The record evidence from trial was that a reasonable jury should have found that Plaintiff was an employee within the meaning of the FLSA, and consequently Tennessee law. The only reasonable conclusion that may be reached on the record in this case is that Plaintiff was an employee.

1. *Permanency of relationship*

At trial both Chihombori and Quao testified that Plaintiff could be hired and terminated by them at will, and that indeed he was hired and terminated at their will. Thus, Plaintiff had a permanent employment relationship akin to at will employee. *Imars,* 1998 U.S. App. LEXIS 21073 at *9-10 (position that is analogous to an at will employment relationship establishes permanence). Further, the undisputed evidence from Plaintiff, Chihombori and Quao was that Mr. Werner worked solely for the Defendants from approximately March 2006 to his termination

in July 2009. Such a continuous relationship indicates permanency. *Imars,* 1998 U.S. App. LEXIS 21073 at *9-10 (exclusive work for one employer for two years established permanency). Thus, reasonable minds could come to the conclusion Plaintiff's relationship with Defendants was permanent and thus, indicated he was an employee.

2. *Degree of skill required*

At trial the evidence established that although Plaintiff had specialized training and skills to perform ultrasounds, he was only able to perform ultrasounds as directed by the physicians at BFM, MTM or Quao, PC. *Imars,* 1998 U.S. App. LEXIS 21073 at *9-10 (although job may require specialized knowledge work done according to boss's instruction indicates employment rather than independent contractor); *Wilson v. Guardian Angel Nursing, Inc.*, 2008 U.S. Dist. LEXIS 59623 (M.D.Tenn. Jul. 31, 2008) (under the skills prong, nurses who performed a "narrow, rather mechanized role" weighed in favor of finding that they were employees). *See* DOL Exemptions Fact Sheet #170- Technologists and Technicians and the Part 541 Exemptions under the FLSA (ultrasound technologists are not exempt under Section 13(a)(1) from the minimum wage and overtime requirements of the FLSA because they generally do not meet the requirements for the learned professional exemption). Further, Werner testified, uncontested by Defendants, that the ultrasounds ordered by Defendants were performed were done according to standard guidelines. Thus, reasonable minds could only come to the conclusion that the degree of skill required to perform Plaintiff's job indicated he was an employee.

3. *Worker's investment in equipment*

The uncontested evidence and testimony from Werner, Quao, and Chihombori was that Plaintiff did not invest in any equipment or supplies to perform his job at BFM, MTM and Quao, PC. *Imars,* 1998 U.S. App. LEXIS 21073 at *9-10 (employer's significant investment in

equipment outweighs employee's marginal investment in equipment). Further, Chihombori confirmed that Werner was reimbursed for anything he bought. Thus, reasonable minds could only come to the conclusion that Plaintiff did not invest in equipment which indicates he was an employee.

   *4. Worker's opportunity for profit or loss, depending on his skill*

Werner, Chihombori and Quao testified that Plaintiff was paid for the hours he was at work, regardless of whether he was actually working, at the same rate for approximately three years. Thus, Plaintiff had no opportunity for profit or loss or bonus based on his skill or efficiency; he was simply paid an hourly rate. *Imars,* 1998 U.S. App. LEXIS 21073 at *9-10 (employee who simply worked and received fixed pay did not have control over his own profit or loss). Thus, reasonable minds could only come to the conclusion that Plaintiff had no opportunity for profit or loss based on his skill which indicates he was an employee.

   *5. Degree of employer's right to control manner in which work is performed*

Werner, Chihombori and Quao testified that Plaintiff could only perform the tests the physicians ordered. Chihombori and Werner both testified that Werner was required to stay at the offices until the patients were gone, which supported Werner's testimony that he was called back to work to stay until all patients were gone. Further, uncontested by Defendants, Werner testified that he had no discretion to control how the work was performed, he simply performed the tests ordered. Thus, reasonable minds could only come to the conclusion that the Defendants had a significant degree of control in the manner in which Plaintiff performed his work which indicated he was an employee.

   *6. Whether the service rendered is integral to employer's business*

Quao's office manager, Christy Reiger admitted that Plaintiff's work was important to the business. Further, Reiger and Christy Talley testified that procedures were more profitable because they were billed at a higher rate than regular office visits. Thus, reasonable minds could only come to the conclusion that the ultrasounds performed by Plaintiff were integral to Defendants' businesses which indicates he was an employee.

### 7. *Economic Dependence*

Werner testified that after he started working for Defendants, he was working too many hours to work elsewhere. Chihombori testified that she paid Werner what she paid the prior technician and Werner testified that he requested that rate of pay after talking to the prior technician about her rates. It was stipulated that Werner's rate of pay was $40.00 per hour. The undisputed testimony is that Werner was paid the same rate the entire time he worked for Defendants. Further, Werner testified he earned at other jobs where he was an employee, anywhere from $28.00 to $30.00 per hour. The testimony indicates that similar work was available elsewhere because Werner has been able to find alternative work since his unlawful termination. Additionally, Chihombori controlled the rate of pay because even though she asked Werner what he wanted to be paid, the amount was not subject to negotiation, but rather she agreed to the same rate she paid the prior technician and Werner did not request more, nor was he given more after the initial rate was set. Lastly, Werner testified that he was required to stay late as long as there were patients being seen and the payroll records indicate he worked a substantial amount of overtime. These facts were not contested by Defendants. Arguably, his rate of pay at $40.00 an hour is not low, but that one factor is not determinative. *Wilson v. Guardian Angel Nursing, Inc.*, 2008 U.S. Dist. LEXIS 59623 at *52 (even though the actual rate of pay may be generous, the rate is not definitive to the entire economic reality test).

9

Accordingly, balancing all factors, reasonable minds could only come to the conclusion that Plaintiff was economically dependent on Defendants.

The proof at trial was undisputed that Plaintiff was an employee. Werner, Chihombori, Quao, Reiger and Talley's testimony supported this fact. There was no evidence that Plaintiff was as a matter of law an independent contractor. The only evidence that he was an independent contractor was that Defendants called him such. However, contractual intention is specifically rejected as a dispositive consideration because "[t]he FLSA is designed to defeat rather than implement contractual arrangements." *Imars*, 1998 U.S. App. LEXIS 21073 *15 (internal cites omitted). Accord *Rutherford Food Corp. v. McComb,* 331 U.S. 722, 729, 67 S. Ct. 1473, 91 L. Ed. 1772 (1947) ("[w]here the work done, in its essence, follows the usual path of an employee, putting on an 'independent contractor' label does not take the worker from the protection of the Act"); *Robicheaux v. Radcliff Material, Inc.,* 697 F.2d 662, 667 (5th Cir. 1983) ("[a]n employee is not permitted to waive employee status"). The facts at trial demonstrated that Plaintiff clocked in, clocked out with a time card provided by Defendants, and did what he was told, just as all other employees did. Moreover, Defendants Chihombori and Quao admitted that the ultrasound technicians they have employed since Mr. Werner have been classified as employees. There is no difference between the two except that the technician called an employee was paid a lower hourly rate, but one of the purposes of the FLSA was to protect against this type of pay practice. *Id.* at *15-16 (the FLSA also prevents employers from contracting with more productive employees who are willing to contract away their FLSA rights to the detriment of less productive ones by making it more expensive for employers to contract with workers to work long hours, instead of spreading the hours among a larger number of workers). Further, Plaintiff was paid for unemployment compensation and his worker's compensation injury through Defendant Bell

10

Family's worker's compensation policy, these facts also indicate that Plaintiff was an employee and Defendants took advantage of that status for purposes of its insurance. *See* Tr. Exhs. 7, 22, 8. Even though Defendant Chihombori blamed the worker's comp payout on her insurance company, she nonetheless took advantage of that benefit for Mr. Werner as an employee.

The economic realities indicate Plaintiff was an employee of Defendants. No reasonable jury could conclude otherwise. Plaintiff is entitled to a finding that he was an employee as defined by the FLSA as a matter of law. *Fegley v. Higgins,* 19 F.3d at 1132 (upholding trial court's determination that plaintiff was an employee); *Wilson v. Guardian Angel Nursing, Inc.*, 2008 U.S. Dist. LEXIS 59623 at 54 (applying the economic realities test, the trial court determined plaintiff nurses were employees as a matter of law at summary judgment).

## B.     Plaintiff is owed travel time from office to office

The "time spent by an employee in travel as part of his principal activity, such as travel from job site to job site during the workday, must be counted as hours worked." 29 C.F.R. § 785.38. Mr. Werner, Chihombori and Quao unequivocally testified that Plaintiff transported equipment and sometimes supplies from office to office and that he was not paid for the travel time from office to office in the course of a workday. Further, as Ms. Talley testified, Defendants' refusal to pay was inconsistent with its practice paying Ms. Talley for her travel time. There was no evidence by Defendants to rebut Mr. Werner's estimate of his travel time from office to office. Tr. Exhs. 5, 29. *Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 687-88, 90 L. Ed. 1515, 66 S. Ct. 1187 (1946) (it is the *employer* who has the responsibility of keeping records of hours under the FLSA), *Shultz v. Tarheel Coals, Inc.,* 417 F.2d 583, 584 (6th Cir. 1969) (quoting *Mt. Clemens*) (where employees presented evidence of work for which they were improperly compensated, burden shifted to employer "'to come forward with evidence of

the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the . . . evidence.'" Thus, Plaintiff is entitled to JMOL that he is owed $6,834.37 for unpaid travel time as a matter of law.

### C.    Plaintiff is owed overtime for time worked in excess of a forty (40) hour workweek

It is undisputed that when the hours from each office is combined that Plaintiff worked in excess of forty hours in a workweek.  Tr. Ex. 29, 2. Thus, because the jury correctly found that Defendants operated as a single enterprise, and set forth *supra*, reasonable minds could only conclude Plaintiff was an employee, Plaintiff is owed overtime.  Accordingly, Plaintiff is entitled to JMOL that he is owed $18,190.00 in unpaid overtime. Defendants did not dispute this estimate at trial or provide any rebuttal testimony or evidence this estimate was incorrect.

### D.    Werner is entitled to JMOL that Defendants willfully disregarded the requirements of the FLSA

FLSA plaintiffs may recover damages for violations occurring in the two-year period preceding the filing of a complaint. *Herman v. Palo Group Foster Home, Inc.*, 183 F.3d 468, 473-74 (6th Cir. 1999). However, if the employer's violation of the FLSA is willful, plaintiffs' period of recovery is extended to three years. *Id.* An employer acts willfully if it knows or shows reckless disregard for whether its pay practices violate the FLSA. *Id.*  The Sixth Circuit has held that a violation of the FLSA was willful where undisputed evidence shows that the employer "had actual notice of the requirements of the FLSA by virtue of earlier violations, his agreement to pay unpaid overtime wages, and his assurance of future compliance with the FLSA." *Elliott Travel*, 942 F.2d at 967.  Further, paying straight time for overtime demonstrates a willful ignorance of the FLSA as a matter of law, thus a court would be justified in finding a willful violation on this basis alone.  *Reich v. Waldbaum, Inc.*, 52 F.3d 35, 41 (2d Cir. 1995).

Defendant Chihombori testified that she was aware of the U.S. DOL investigation into Quao, PC's pay practices and that she had not considered whether the classification of Werner was correct or not. Quao testified that he met with a U.S. DOL investigator who notified him that Werner was improperly classified and that the entities were operating as a single enterprise and that he was given DOL pamphlets about the same in 2009. Tr. Ex. 18. Despite being given this information from the U.S. DOL. Quao testified he did not look into the issue further and that nothing has been done about Werner's classification and the DOL's guidance on the same. Additionally, Defendants purposefully paid Plaintiff straight time, getting around the overtime pay provisions of the FLSA, which indicate, at best, Defendants were willfully ignorant of the FLSA. *Reich v. Waldbaum, Inc.*, 52 F.3d at 41. Accordingly, no reasonable jury could find that Defendants did not willfully disregard the FLSA's provisions as a matter of law, thus Plaintiff's period of recovery is three years. At trial, Defendants did not dispute Plaintiff's estimate at trial based on a three year period of recovery or provide any rebuttal testimony or evidence this estimate was incorrect. Tr. Exh. 29.

### E. Werner is entitled to JMOL that Chihombori and Quao operated Jointly with the entity Defendants

The undisputed evidence at trial was that Defendants Chihombori and Quao had operational control over the entity enterprises and are therefore jointly and severally liable with the business as an employer. Whether Defendants operated jointly is an issue of law. *Dole v. Elliott Travel & Tours, Inc.,* 942 F.2d 962, 965 (6th Cir. 1991) (The court determines as a matter of law whether a party is an employer using an "economic reality" test). When an employee works for more than one company at a time, a determination must be made whether the employee's employers should be treated separately or jointly for purposes of determining the employers' liability under the FLSA. 29 C.F.R. § 791.2. *Pierce v. Coleman Trucking, Inc. et al.,*

13

2005 U.S. Dist. LEXIS 20942 at *10. When an employee works for two or more employers at different times during the workweek, a joint employment relationship generally will be considered to exist when:

> (1) Where there is an arrangement between the employers to share the employee's services, as, for example, to interchange employees; or (2) Where one employer is acting directly or indirectly in the interest of the other employer (or employers) in relation to the employee; or (3) Where the employers are not completely disassociated with respect to the employment of a particular employee and may be deemed to share control of the employee, directly or indirectly, by reason of the fact that one employer controls, is controlled by, or is under common control with the other employer.

29 C.F.R. § 791.2(b). The FLSA contemplates the existence of multiple, simultaneous employers who are responsible for compliance with the FLSA and payment of wages. *Elliott Travel*, 942 F.2d at 965 (citing *Falk v. Brennan*, 414 U.S. 190, 195 (1973)). In making a determination as to whether a party is an employer, "economic reality" controls rather than common law concepts of agency. *Id.* (citing *Goldberg v. Whitaker House Cooperative,* 366 U.S. 28, 33, (1961)). An individual corporate officer with operational control over the enterprise is jointly and severally liable with the business as an employer. *Elliott Travel*, 942 F.2d at 965. "[C]orporate officers with a significant ownership interest who had operational control of significant aspects of the corporation's day to day functions, including compensation of employees, and who personally made decisions to continue operations despite financial adversity during the period of non-payment" were employers under the FLSA. *Id.*

Testimony and stipulations at trial indicated that Chihombori owns 100% of BFM and 33 1/3 % of MTM. Dr. Quao owns 100% of Quao, PC and 33 1/3% of MTM. Proposed Pretrial Order, ECF No. 135, Stipulations at 8. Chihombori testified she set Werner's pay rates, hired and fired him for BFM, MTM and Quao, PC. Chihombori also testified she made operational decisions concerning BFM and MTM. Likewise, Quao testified he made operational decisions

concerning Quao, PC, including the purchase of the ultrasound machine that he purchased for the entities. Chihombori, Quao, Reiger and Talley testified that employees were shared between the three entities and that Chihombori coordinated the scheduling. Thus, Quao and Chihombori were not completely disassociated with respect to the employment of Werner, Talley and Reiger and thus, may be deemed to share control of these employees, directly or indirectly, by reason of the fact that Quao and Chihombori controls, is controlled by, or is under common control with each other. Further, testimony by Quao and Chihombori indicated that Defendants have substantial cross over between their business and personal banking accounts, and that employees, like Gus Puga work for them both on a personal and professional basis. Accordingly, a reasonable jury could only conclude that Chihombori and Quao are jointly and severally liable as a matter of law for FLSA violations.

**III.** **Plaintiff is Entitled to JMOL on his Retaliation Claims**

Plaintiff is entitled to JMOL that Defendants retaliated against him for engaging in protected conduct under the FLSA and Tennessee law. Werner testified and the evidence presented at trial demonstrated Plaintiff filed a claim for worker's compensation in March 2009. Tr. Exhs. 7, 8. On or about June 24, 2009, Mr. Werner filed a civil complaint alleging FLSA wage violations. Stipulations, ECF No. 159, ¶ 5. Shortly thereafter, Plaintiff was terminated for filing the instant lawsuit on July 7, 2009. Stipulations, ECF No. 159, ¶ 4. Plaintiff's termination letter drafted by Chihombori directly stated that Plaintiff was being terminated because he filed a claim for worker's compensation and/or because he filed the instant lawsuit. Tr. Exh. 9. Quao, Chihombori and Werner testified that when Plaintiff was terminated, he was given a termination letter that was effective for BFM, MTM and Quao, PC, the letter stated "Re: Lawsuit." *Id.* Chihombori testified that when she terminated Mr. Werner after Quao received a copy of the

lawsuit that "you can only punch me in the face so many times before you finally react." No reasonable jury could not find that Werner was terminated for any reason other than his protected conduct of asserting worker's compensation claims and filing a lawsuit for unpaid wages.

The anti-retaliation provision of the FLSA provides that an employer is prohibited from "discharg[ing] or in any other manner discriminat[ing] against [an] employee because such employee has filed [a] complaint or instituted ... any proceeding under [the FLSA]." 29 U.S.C. § 215(a)(3). The analysis for retaliation claims under Title VII applies to an FLSA claim of retaliation. *See, e.g., Adair v. Charter County of Wayne*, 452 F.3d 482, 489 (6th Cir.2006). A plaintiff may establish retaliation either by introducing direct evidence of retaliation or by proffering circumstantial evidence that would support an inference of retaliation. *Imwalle v. Reliance Med. Prods*., 515 F.3d 531, 543 (6th Cir. 2008). Direct evidence is evidence, which if believed, does not require an inference to conclude that unlawful retaliation motivated an employer's action. *Id.* at 543-544. Direct evidence "requires the conclusion that unlawful retaliation was a motivating factor in the employer's action." *Abbott v. Crown Motor Co*., 348 F.3d 537, 542 (6th Cir. 2003). The letter stating Mr. Werner was being terminated for filing a lawsuit is direct evidence of retaliation that could not be interpreted in any other way than it was plainly written. Tr. Exh. 9.

Retaliation damages under the FLSA are controlled by 29 U.S.C. § 216(b) which provides, "any employer who violates the provisions of section 215(a)(3) of this title shall be liable for such legal or equitable relief as may be appropriate to effectuate the purposes of section 215(a)(3) of this title, including without limitation employment, reinstatement, promotion, and the payment of wages lost *and an additional equal amount as liquidated damages*." *Moore v. Freeman*, 355 F.3d 558, 563-564 (6th Cir. 2004).

The TPPA provides that no employee shall be discharged solely for refusing to participate in or to remain silent about illegal activities. TCA § 50-1-304(a). "Illegal activities" include state and federal criminal and civil violations, as well as violation of any regulation affecting public health, safety, and welfare. TCA § 50-1-304(c). To prevail under the TPPA, the plaintiff must establish (1) his status as an employee of the defendant employer; (2) his refusal to participate in, or remain silent about, "illegal activities" as defined under the Act; (3) his termination; and (4) an exclusive causal relationship between his refusal to participate in or remain silent about illegal activities and his termination. *Franklin v. Swift Transp. Co., Inc.,* 210 S.W.3d 521, 528 (Tenn. Ct. App. 2006). Filing a worker's compensation claims satisfies prong two of the analysis. *Anderson v. Standard Register Co.*, 857 S.W.2d 555, 557-558 (Tenn. 1993).

The elements required in order to prove a common law retaliatory discharge claim are similar to a TPPA claim; the plaintiff must show (1) that an employment-at-will relationship existed; (2) that he was discharged; (3) that the reason for his discharge was that he attempted to exercise a statutory or constitutional right, or for any other reason which violates a clear public policy evidenced by an unambiguous constitutional, statutory, or regulatory provision; and (4) that a substantial factor in the employer's decision to discharge him was his exercise of protected rights or his compliance with clear public policy. *Franklin v. Swift Transp. Co., Inc.* 210 S.W.3d at 528. The primary difference between the common law and statutory claims is that, to benefit from statutory protection, an employee must demonstrate that his or her refusal (to participate in or to remain silent about illegal activities) was the *sole* reason for his or her discharge. TCA § 50-1-304(a); *Guy v. Mut. of Omaha Ins. Co.,* 79 S.W.3d 528, 535-37 (Tenn. 2002).

Plaintiff is entitled to JMOL on his retaliation claims under the FLSA and Tennessee law because the evidence was undisputed that his termination was motivated or caused by his

protected conduct as set forth in the termination letter drafted by Chihombori. The Parties stipulated that the appropriate amount of back pay damages was $117,434.00. Stipulations, ECF No. 159, ¶ 17. Moreover, because the undisputed evidence indicates that Plaintiff's termination was motivated his complaint for unpaid wages, this amount should be liquidated. *See Def's Damages Brief*, ECF No. 133 at 3.

## IV.   Plaintiff's FLSA Damages are to be Liquidated As a Matter of Law

As a matter of law the Defendants are liable to Plaintiff for liquidated damages. The FLSA provides that any employer found to have violated its provisions "shall be liable" to the affected employees in the amount of their unpaid overtime compensation as well as liquidated damages in an equal amount. 29 U.S.C. § 216(b). Liquidated damages are deemed "compensation, not a penalty or punishment." *McClanahan v. Mathews,* 440 F.2d 320, 322-23 (6th Cir. 1971) (quoting *Overnight Motor Transp. Co. v. Missel,* 316 U.S. 572, 583, 62 S. Ct. 1216, 86 L. Ed. 1682 (1942)). The FLSA grants courts the discretion to decline to award liquidated damages "if the employer shows to the satisfaction of the court that the act or omission . . . was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA]." 29 U.S.C. § 260. In other words, an award of liquidated damages is the norm; courts may decline to award liquidated damages in exceptional circumstances *"if, and only if,* the employer shows that he acted in good faith and that he had reasonable grounds for believing that he was not violating the Act." *Dole v. Elliottt Travel & Tours, Inc*., 942 F.2d 962, 967 (6th Cir. 1991) (quoting *Marshall v. Brunner,* 668 F.2d 748, 753 (3d Cir.1982) (emphasis in original)).

As set forth *supra* in section II, D, these Defendants did not have reasonable grounds for believing they did not violate the FLSA. Quao testified they had been provided information from

the U.S. Department of Labor to the contrary and they nonetheless made no efforts to change their pay practices. Tr. Exh. 18. Additionally, the Defendants had been provided information from the IRS and Tennessee Department of Labor that should have led them to investigate their pay practices further, but both Quao and Chihombori testified that they have made no changes to their pay practices and have certainly not paid Mr. Werner the wages he is owed. Tr. Exhs. 12-14, 22. Further, the Defendants simply failed to introduce <u>any</u> evidence that they acted in good faith and that they had reasonable grounds for believing that they were not violating the Act. *Dole v. Elliottt Travel & Tours, Inc.*, 942 F.2d at 967. Accordingly, Plaintiff's damages under the FLSA, $6,834.37, $18,190.00 and $117,434.00 are to be liquidated for a total award of $13,668.74 for unpaid travel time, $36,380 for unpaid overtime and $234,868 for backpay.

**V.      Plaintiff is Entitled to an Award of Attorney's Fees and Costs as A Matter of Law**

An award of attorney fees to a prevailing plaintiff under § 216(b) of the FLSA is mandatory, but the amount of the award is within the discretion of the judge. *Fegley v. United Slate, Tile & Composition Roofers, Damp and Waterproof Workers Ass'n, Local 307 v. G & M Roofing and Sheet Metal Co.,* 732 F.2d 495, 501 (6th Cir. 1984). Attorney's fees are recoverable under the TPPA. T.C.A. § 50-1-304(d). As set forth *supra*, Plaintiff is entitled to a JMOL on his FMLA and TPPA claims. Accordingly, as the prevailing plaintiff, he is entitled to an award of his attorney's fees and costs.

**VI.      Alternatively, Plaintiff is Entitled to a New Trial**

Rule 50(b) permits a party to "include an alternative or joint request for a new trial under Rule 59" in its renewed motion for JMOL. Fed. R. Civ. P. 50(b). Plaintiff asserts that he is entitled to JMOL under Rule 50. In the alternative, Plaintiff requests a new trial based on the insufficiency of the evidence to support the verdict. The jury verdict is against the clear weight

of the evidence and contrary to the law. Respectfully, the issue of whether Plaintiff was an employee (versus an independent contractor) and was jointly employed by Defendants were issues of law that should not have been given to the jury in the first instance. As shown above, the verdict is against the clear weight of the evidence and contrary to the law.

WHEREFORE, Plaintiff respectfully requests that the Court grant his motion for JMOL. In the alternative, Plaintiff requests that the Court grant his motion for a new trial on the FLSA and retaliation claims.

Respectfully submitted,
COLLINS LAW FIRM
/s Heather Moore Collins
Heather Moore Collins, BPR # 026099
2002 Richard Jones Rd., Suite 200-B
Nashville, Tennessee 37215
615-724-1996
615-691-7019 (fax)
heather@hmcollinslaw.com
Attorney for Plaintiff

## CERTIFICATE OF SERVICE

I HEREBY certify that a copy of the foregoing has been filed this 18th day of June, 2012 with the United States District Court, Middle District of Tennessee by using the CM/ECF system and notice of such electronic filing will be electronically mailed to Attorneys for Defendants, Mr. Thomas M. Pinckney, Esq. and Mr. Stephen W. Elliott, Esq., HOWELL & FISHER, PLLC, Court Square Building, 300 James Robertson Parkway, Nashville, Tennessee 37201, tpinckney@howell-fisher.com, selliott@howell-fisher.com.

/s/ Heather Moore Collins
Heather Moore Collins