UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| MARCUS WERNER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| BELL FAMILY MEDICAL CENTER, ) | 3:09 C 0701 |
| INC., MIDDLE TN MEDICAL ) | Judge Marvin E. Aspen |
| ASSOCIATES, PLLC, NII SABAN ) | |
| QUAO, M.D., P.C., ARIKANA ) | |
| CHIHOMBORI, M.D., NII SABAN ) | |
| QUAO, M.D., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

MARVIN E. ASPEN, United States District Judge:

Presently before us is Plaintiff Marcus Werner's renewed Motion for Judgment as a Matter of Law ("JMOL") and Alternative Motion for New Trial. (Dkt. No. 168.) Werner contends that the jury's verdict, largely in favor of Defendants, was contrary to the evidence presented at trial. He asks that we grant him JMOL on certain claims pursuant to Rule 50(b) of the Federal Rules of Civil Procedure or, alternatively, a new trial pursuant to Rule 59. As set forth below, we deny the motion. Additionally, we grant Werner's Amended Bill of Costs (Dkt. No. 174) and award him $4540.07.

## BACKGROUND

We assume familiarity with the facts and procedural history underlying this motion. By way of brief background, Werner alleged that he was misclassified as an independent contractor when he worked as an ultrasound technician for Defendants, who wilfully failed to pay him

proper overtime wages under the Fair Labor Standards Act ("FLSA"). He further alleged that Defendants retaliated against him, wrongfully terminated him, and defamed him in violation of various state and federal laws.

This case was tried to a jury May 15 to 17, 2012. Defendant Drs. Arikana Chihombori and Nii Saban Quao testified—along with two of Werner's co-workers, Christy Rieger and Christy Talley—about the ownership and operation of Defendants' offices, as well as Werner's work and behavior. The jury also heard testimony from Detective Jason Anderson of the Smyrna Police Department, who investigated Defendants' unfounded allegation that Werner had stolen documents from them. Werner took the stand as well, describing, inter alia, the circumstances of his hiring and termination, his work with Defendants and other employers, his workers' compensation claim, and his dealings with the Internal Revenue Service.

The jury concluded that, although Defendants operated as a single enterprise for purposes of the FLSA, Werner was not an "employee" as defined by the statute. They explicitly found that he was an independent contractor in his work with Defendants. They therefore did not award Werner damages for unpaid travel time, overtime, or other damages under applicable wage and hour laws. The jury found in Werner's favor on the defamation claim, however, and awarded him $15,000 in compensatory damages.

Werner now seeks JMOL or a new trial on his wage claims, arguing that the jury erred by ignoring overwhelming evidence at trial that he was an employee of Defendants and was unlawfully discharged. He argues that a reasonable jury could have found only that he was an employee and, thus, he is entitled to more than $280,000 in compensatory and liquidated damages. In addition to challenging the jury's conclusion, Werner also contends that we—and

not the jury—should have determined his employment status as a matter of law, an argument raised at earlier stages of the litigation.

**STANDARD**

Pursuant to Rule 50(b), we may grant JMOL "only if in viewing the evidence in the light most favorable to the non-moving party, there is no genuine issue of material fact for the jury, and reasonable minds could come to but one conclusion, in favor of the moving party." *Radvansky v. City of Olmsted Falls*, 496 F.3d 609, 614 (6th Cir. 2007) (internal quotation omitted); *Sykes v. Anderson*, 625 F.3d 294, 304–05 (6th Cir. 2010). In undertaking this analysis, we may not "reweigh evidence or assess the credibility of witnesses." *Radvansky*, 496 F.3d at 614; *Sykes*, 625 F.3d at 305; *see Jones v. Nissan N. Am., Inc.*, 438 Fed. Appx. 388, 396–97, No. 09 C 5786, 2011 WL 3701785, at *7 (6th Cir. Aug. 18, 2011). "Our review is restricted only to the evidence that was admitted at trial." *Sykes*, 625 F.3d at 305. To succeed at this stage, a party seeking JMOL must "overcome the substantial deference owed a jury verdict." *Radvansky*, 496 F.3d at 614.

Along with a Rule 50(b) motion, a party "may include an alternative or joint request for a new trial under Rule 59." Fed. R. Civ. P. 50(b); *see also Stooksbury v. Ross*, No. 09 C 498, 2012 WL 1946001, at *1 (E.D. Tenn. May 30, 2012). As set forth by the Sixth Circuit, a new trial is required only "when a jury had reached a seriously erroneous result as evidenced by (1) the verdict being against the weight of the evidence; (2) the damages being excessive; or (3) the trial being unfair to the moving party in some fashion." *Mike's Train House, Inc. v. Lionel, L.L.C.*, 472 F.3d 398, 405 (6th Cir. 2006) (internal quotation and citation omitted); *see Rayford v. Ill. Cent. R.R.*, No. 11 C 5507, 2012 WL 2755844, at *6 (6th Cir. July 9, 2012); *Jones*, 438 Fed.

Appx. at 396–97; *Conte v. Gen'l Housewares Corp.*, 215 F.3d 628, 637 (6th Cir. 2000). Here, Werner contends that the jury's verdict was against the clear weight of the evidence. (Mem. at 3, 20.) In analyzing this contention, we "may compare the opposing proofs and weigh the evidence." *Conte*, 215 F.3d at 637; *Mathis v. Wayne Cty. Bd. of Educ.*, No. 09 C 34, 2011 WL 3320966, at *5 (M.D. Tenn. Aug. 2, 2011). Nonetheless, courts are not at liberty to "reweigh the evidence and set aside the jury verdict merely because the jury could have drawn different inferences or conclusions or because judges feel that other results are more reasonable." *Jones*, 438 Fed. Appx. at 396–97 (quoting *Barnes v. Owens-Corning Fiberglas Corp.*, 201 F.3d 815, 821 (6th Cir. 2000)). In other words, we must deny a motion for a new trial as long as a reasonable juror could have reached the verdict under review—even if we might have reached a different conclusion had we acted as the finder of fact at trial. *Jones*, 438 Fed. Appx. at 396–97; *Taylor v. TECO Barge Line, Inc.*, 517 F.3d 372, 383 (6th Cir. 2008); *Barnes*, 201 F.3d at 821; *Mathis*, 2011 WL 3320966, at *5. The moving party bears the burden of proving that either JMOL or a new trial is warranted. *See Radvansky*, 496 F.3d at 614; *Mathis*, 2011 WL 3320966, at *5.

## ANALYSIS

### A. *Whether the Jury Should Have Decided Werner's Status*

In the present motion, Werner reiterates an argument previously raised: whether the presiding judge, or the jury, should decide his employment status. (Mem. at 3; Reply at 3; *see also* Pl.'s Trial Brief at 1, 8.) Werner insists that this is a question of law we should have resolved prior to trial, not a question of fact that should have been given to the jury.

Werner is correct that the determination of an employment relationship is generally a

question of law, but he oversimplifies the analysis. *See Imars v. Contractors Mfg. Servs., Inc.*, No. 97 C 3543, 1998 WL 598778, at *3 (6th Cir. Aug. 24, 1998). The Sixth Circuit has repeatedly explained how courts evaluate this question:

> The determination of employment status is a mixed question of law and fact. Normally, a judge will be able to make this determination as a matter of law. However, where there is a genuine issue of fact or conflicting inferences can be drawn from the undisputed facts, as here, the question is to be resolved by the finder of fact in accordance with the appropriate rules of law.

*Lilley v. BTM Corp.*, 958 F.2d 746, 750 n.1 (6th Cir. 1992); *Sanford v. Main Street Baptist Church Manor*, 449 Fed. Appx. 488, 491, No. 10 C 5323, 2011 WL 6016247, at *2 (6th Cir. Dec. 5, 2011); *Bryson v. Middlefield Volunteer Fire Dept.*, 656 F.3d 348, 352 (6th Cir. 2011); *Imars*, 1998 WL 598778, at *3; *see also LeMaster v. Alternative Healthcare Solutions, Inc.*, 726 F. Supp. 2d 854, 860 (M.D. Tenn. 2010). As discussed in our May 1, 2012 Opinion—and as Judge Haynes held in his order denying Plaintiff's motion for partial summary judgment last year—factual disputes precluded resolution of this issue as a matter of law. *Werner v. Bell Family Med. Ctr.*, No. 09 C 0701, 2012 WL 1514872, at *1 (M.D. Tenn. May 1, 2012); *Werner v. Bell Family Med. Ctr.*, No. 09 C 0701, 2011 WL 1042255, at *6 (M.D. Tenn. Mar. 18, 2011). Given the open issues of fact and conflicting inferences that could be drawn in this case, we lacked the authority to make this determination. The parties elected a jury trial, and only the jury was empowered to resolve the critical question of Werner's employment status.

**B.     *Whether the Jury Could Reasonably Have Reached Its Conclusion that Werner Was an Independent Contractor***

The issue posed in this motion, to which we now turn, is whether the jury could have reasonably resolved that critical question in Defendants' favor. With respect to his JMOL

motion, Werner contends that the evidence presented at trial allowed only one conclusion: that he was an employee of Defendants. In Rule 59 parlance, he contends that the jury reached a seriously erroneous result because the verdict was against the weight of the evidence. The focus of the Rule 50 and Rule 59 inquiries here is the same, such that both requests must be denied unless Werner can show that no reasonable juror could have concluded that he was an independent contractor.

In his brief, Werner sets out the economic realities test, as interpreted by the Sixth Circuit and used to determine an individual's employment status. (Mem. at 5–11.) *See also Donovan v. Brandel*, 736 F.2d 1114, 1117 (6th Cir. 1984). He recounts the testimony and evidence from trial pertinent to each factor and contends that all factors weigh in his favor, such that the jury could have found only that he was Defendants' employee. There are two glaring flaws with this argument, however.

First, as Defendants point out, Werner has not provided the trial transcript to substantiate his arguments. Perhaps Werner is correct that the transcript is not technically required, and that we could rely on our own notes and recollections from the trial (along with his) to evaluate the pending motion. (*See* Reply at 2.) But Werner has wrongly assumed that we would be comfortable with such an approach. We are not. Even with copious notes, we would be hard-pressed to fully and fairly review and compare the opposing proofs presented at trial.[1] *Conte*, 215 F.3d at 637; *Mathis*, 2011 WL 3320966, at *5. The jury's verdict is entitled to substantial deference, and we will not disturb it based solely on Werner's, or our, recollections.

---

[1] In addition, it is not our duty to take detailed, comprehensive notes of each witness, document, or argument at a trial that is being transcribed by an official court reporter, on the off chance such notes might be useful in the future.

Second, Werner simply has not demonstrated that the jury erred in deeming him an independent contractor. Werner continues to gloss over the factual disputes that necessitated a trial in the first instance, and the competing inferences that can be drawn from even uncontested facts. For example, Werner contends that the degree of skill factor weighs in his favor because he could perform ultrasounds only if Drs. Chihombori and Quao ordered them for patients. (Mem. at 7.) Yet he acknowledges that he had specialized training and skills. (*Id.*) While Werner attempts to downplay the significance of that unique training by contending that he just followed standard guidelines, he apparently does not dispute that no other worker could perform onsite ultrasounds for Defendants.

With respect to the degree of control factor, Werner again points to the fact that he performed ultrasounds only when Defendants required them. This fact cuts both ways, however. As a practical matter, no employee or independent contractor performs work not needed or requested by the employer. More importantly, Werner does not suggest that Defendants told him how to perform ultrasounds, critiqued their quality, or made recommendations on his work. Defendants told him to complete an ultrasound for a particular patient, but there is no question that he retained discretion to decide how best to do it. The parties also disputed whether Werner controlled his hours: although he was required to work until all patients had left, it appears that no ultrasounds took place onsite if he was not at an office when needed. Ultimately, multiple inferences could be drawn from these various facts, along with others, presented at trial.

By way of another example, Werner contends that his work was integral to Defendants' business because his procedures were more profitable than regular office visits. (Mem. at 9.) Certainly Werner's work contributed to the success and profitability of Defendants' medical

practices. On the other hand, however, Werner cannot say that Defendants relied on his work to effectuate the primary purpose of their practices. *See Wilson v. Guardian Angel Nursing, Inc.*, No. 07 C 69, 2008 WL 2944661, at *17 (M.D. Tenn. July 31, 2008) (considering what work lies at the heart of defendants' business). The heart of Defendants' business was not providing ultrasounds, like an independent diagnostic facility, or providing ultrasound technicians, like a staffing agency—but operating full-service family medical practices. Werner does not allege, for example, that every patient, or even a significant percentage of patients, needed ultrasounds. Had the practices focused so heavily on ultrasounds, perhaps Defendants would have hired a technician for each location, each day of the week, rather than schedule Werner to rotate among the different offices. Regardless, and contrary to Werner's assertion, reasonable minds could draw more than one inference on these facts about the importance of Werner's work to Defendants' overall operation.

Conflicting inferences could also be drawn from the evidence of Werner's economic dependence on his work with Defendants. Werner contends that he was working too many hours for Defendants to find or hold another job. (Mem. at 9.) While that point is relevant, he also acknowledges that he was able to find other employment as an ultrasound technician in the area, both before and after his work with Defendants. (*Id.*) Werner concedes that Defendants agreed to pay him what he asked when he was hired. Although Werner claims that the pay rate thus was not subject to negotiation, this argument falters. One could readily infer there was no need for the parties to negotiate when Defendants readily acquiesced in Werner's initial request. Under that interpretation, Werner set his own pay rate. The jury could have reasonably found on these facts that Werner was not bound to Defendants the way that typical "employees" are dependent

on their employers. *See Brandel*, 736 F.2d at 1120; *Wilson*, 2008 WL 2944661, at *17.

In sum, while some of the evidence presented at trial surely support Werner's position, other facts and inferences support the jury's conclusion that he was an independent contractor. The jury did not have to find facts and draw inferences in favor of Defendants as they did on Werner's wage claims, but they did so reasonably on the record before them. Because reasonable minds could have reached this verdict, it must be upheld. *Radvansky*, 496 F.3d at 614; *Barnes*, 201 F.3d at 821. Werner has not shown that the jury reached the wrong conclusion and, thus, his motion is denied.

## C. *Whether Werner Is Entitled to Costs*

We turn then to briefly address a different post-trial matter, Werner's Amended Bill of Costs. (Dkt. No. 174.) Defendants contend that Werner should bear his own costs because he succeeded on only one of the five claims he brought against them. (Obj. ¶ 2 (Dkt. No. 172).) They argue that his recovery on the defamation claim was so insignificant that he cannot be considered a "prevailing party" for purposes of Rule 54(d)(1) and that, in any event, we should exercise our discretion to deny the request for costs. (*Id.*)

It is well-established that "[a] party is the prevailing party under Rule 54(d) even when it is only partially successful." *Andretti v. Borla Performance Indus., Inc.*, 426 F.3d 824, 835 (6th Cir. 2005) (citing *Zackaraoff v. Koch Transfer Co.*, 862 F.2d 1263, 1265–66 (6th Cir. 1988)); *see Maker's Mark Distillery, Inc. v. Diageo N. Am., Inc.*, 679 F.3d 410, 425 (6th Cir. 2012) (noting that plaintiff "did not need to win every claim to be considered the prevailing party"). Pursuant to this guiding principle, we have no qualms concluding that Werner is the prevailing party. Although he failed to persuade the jury that he was an employee, a prerequisite for success on his

four employment-related claims, he plainly prevailed in the defamation claim. Indeed, the jury's award of $15,000 can hardly be considered insignificant, particularly when even nominal damages suffice. *See Andretti*, 426 F.3d at 835.

We furthermore see no reason to deny Werner the requested costs. Rule 54(d)(1), on its face, "creates a presumption in favor of awarding costs, but allows denial of costs at the discretion of the trial court." *Knology, Inc. v. Insight Commc'ns, L.P.*, 460 F.3d 722, 726 (6th Cir. 2006) (quoting *Singleton v. Smith*, 241 F.3d 543, 539 (6th Cir. 2001)); *Watkins v. Bailey*, No. 09 C 2149, 2011 WL 2636831, at *1 (W.D. Tenn. July 6, 2011). As both parties agree, we may deny costs when "it would be inequitable under all the circumstances in the case." *Andretti*, 426 F.3d at 836 (internal quotation omitted). For example, we could appropriately deny costs "when the prevailing party's expenditures are unreasonably large, when the prevailing party prolonged the litigation or injected unmeritorious issues, in cases that are close and difficult" or when "recovery is so insignificant that the judgment amounts to a victory for the defendant." *Andretti*, 426 F.3d at 836 (internal quotation omitted). None of these circumstances are present here, such that we need to set aside the Rule 54(d) presumption to avoid injustice.

Additionally, having reviewed Werner's Amended Bill of Costs and accompanying records, we overrule Defendants' objections to certain items. (Obj. ¶ 3.) Werner has adequately explained and substantiated each item submitted for reimbursement, and we hereby grant him $4540.07 in costs as requested.

## CONCLUSION

For the reasons set forth above, Werner's motion for JMOL or a new trial (Dkt. No. 168) is denied. Werner's Amended Bill of Costs (Dkt. No. 174) is granted in the amount of $4540.07. It is so ordered.

                                                                          _____
                                                                          Marvin E. Aspen
                                                                          United States District Judge

Dated:        August 10, 2012